VENABLE, LLP
William M. Sloan (SBN 203583)
wmsloan@venable.com
Tyler G. Welti (SBN 257993)
tgwelti@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:    415.653.3750
FACSIMILE: 415.653.3755

KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
ERIC H. MACMICHAEL - # 231697
emacmichael@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Plaintiff ATHLETICS INVESTMENT GROUP, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ATHLETICS INVESTMENT GROUP, LLC, | Case No. 3:21-cv-05246-MMC |
| Plaintiff, | Hon. Donna M. Ryu |
| v. | **JOINT LETTER REGARDING CIVIL DISCOVERY DISPUTE** |
| SCHNITZER STEEL INDUSTRIES, INC., | |
| Defendants. | |

August 2, 2023

To: The Honorable Donna M. Ryu

Re: <u>**Joint Letter for Discovery Relief – Case No.:  3:21-05246-MMC (N.D. Cal.)**</u>

Plaintiff Athletics Investment Group, LLC ("AIG") and Defendant Schnitzer Steel Industries, Inc. ("Schnitzer") submit this joint letter brief to resolve a dispute regarding whether Defendant should be compelled to allow Plaintiff to conduct an inspection of Defendant's facility pursuant to Fed. R. Civ. P. 34(a)(2).  Plaintiff's request and Defendant's objections are set forth in Exhibit A.  Undersigned counsel attest that the parties have met and conferred over this discovery issue, most recently on July 25, 2023 via Zoom, but have reached an impasse requiring the Court's intervention.  The current case schedule includes these deadlines: close of non-expert discovery (August 29, 2023); close of expert discovery (November 21, 2023); deadline to file dispositive motions (December 12, 2023); pretrial conference (June 11, 2024); and trial (June 24, 2024).

**<u>Plaintiff's Position</u>**

The inspection is directly relevant to Plaintiff's claims under the Clean Air Act ("CAA") and is plainly authorized by the Federal Rules of Civil Procedure.  The inspection is proportional to Plaintiff's needs and not outweighed by Defendant's unsupported relevance and burden assertions.

**Background.**  Defendant owns and operates California's largest metal shredding facility in West Oakland.  Plaintiff filed this lawsuit under the citizen suit provision of the CAA, alleging that Defendant's operations emit excessive levels of air pollutants in violation of the CAA to the detriment of the West Oakland community.  Defendant's facility lies at the heart of this case.  An inspection of the facility is directly relevant to Plaintiff's claims and necessary for AIG's preparation of its case.

Plaintiff served its Request for Inspection of Defendant's facility on February 3, 2023, pursuant to Fed. R. Civ. P. 34(a)(2).  Defendant objected on March 1, 2023.  After meeting and conferring, Defendant agreed to permit the inspection (under certain conditions) on April 6, 2023.  The parties agreed that the inspection would occur on June 14, 2023.  At Defendant's request, Plaintiff agreed to Defendant's safety measures, provided a detailed sampling plan and the related protocols, identified attendees, and agreed to share all photographic and video imagery with Defendant (among other conditions).  On June 12, 2023, just two days before the scheduled inspection, Defendant cancelled because one of Defendant's attorneys tested positive for Covid-19.  Plaintiff promptly sought to reschedule the inspection.  Defendant repeatedly promised to provide new dates for the inspection and even signed a joint request to the Court to continue the fact discovery cut off, relying on the need to allow time for AIG to inspect the facility (among other reasons).  Dkt. 66.  Judge Chesney granted this request.  Dkt. 67.  Nevertheless, on July 25, 2023, just four weeks before the close of fact discovery, Defendant abruptly reversed course, informing Plaintiff that it would not allow an inspection.  Defendant's last-minute refusal prejudices Plaintiff's ability to prepare expert testimony and prepare for upcoming depositions, and deprived Plaintiff of the opportunity to seek judicial intervention earlier.

**Relevance.**  Defendant contends that a site inspection and stockpile sampling are irrelevant because BAAQMD's regulations govern the facility and private litigants cannot enforce violations of those rules or the CAA.  Defendant ignores that Congress included the CAA's citizen suit provision to "increase enforcement of public law when the government lacks the

1

2335207

resources or will to handle the entire task." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1243 (10th Cir. 2021).  Plaintiff contends that Defendant's facility and its numerous sources emit regulated pollutants in violation of the CAA.  Compl. ¶ 46-47, 65-66, 71-72.  Whereas BAAQMD "lacks the resources or will" to regulate these sources and diligently enforce its rules, Plaintiff is stepping in enforce those standards.

Despite an extensive discovery process, Defendant has still not provided Plaintiff reliable data, tests, or discovery regarding the full extent of emissions from sources at the facility (including the various stockpiles) or emissions controls.  For example, Defendant has failed to identify with specificity how many stockpiles there are, how big they are, or how they are managed.  Defendant has even claimed that some of the stockpiles cause no emissions, despite acknowledging that the stockpiles are the major ongoing source of emissions of light fibrous material—a hazardous waste containing toxic air contaminants—from the facility into surrounding neighborhoods.  Under these circumstances, Rule 26 permits Plaintiff to inspect the facility and sample the stockpiles to proffer its own conclusions on the types and quantities of pollutants they emit.  Rule 26 contains a "broad right of discovery" that promotes "wide access to relevant facts which serve the integrity and fairness of the judicial process by promoting the search for the truth." *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 824 (9th Cir. 2004) (simplified).  Indeed, "the inclusion of testing and sampling of tangible things and objects or operations on land reflects a need frequently encountered by parties in preparation for trial."  *See* Fed. R. Civ. P. 34(a)(2) (advisory comm. notes) (simplified).  Plaintiff's ability to observe the entire facility is necessary to better determine what sources exist on the premises, how they are operated, how emissions are controlled, and how emissions control technologies could be implemented to capture and reduce emissions from key sources.

Inspecting the Joint Products Plant is clearly relevant to Plaintiff's claims.  For example, Defendant has asserted that it would not be feasible to enclose its large, outdoor stockpiles of hazardous metal shredder aggregate and other materials that emit air pollutants.  Yet Defendant *has* enclosed certain stockpiles in its Joint Products Plant.  Examining the Plant is relevant to showing that enclosure of stockpiles to control air emissions is feasible.  Additionally, Plaintiff's claims that Defendant violated the CAA by operating a major facility without a Title V permit for over 15 years implicates facility-wide emissions, including emissions from the Plant.  Plaintiff's ability to sample Defendant's stockpiles is also highly relevant to Plaintiff's claims, especially in light of Schnitzer's denial that its stockpiles emit hazardous or criteria air pollutants.  The composition of the stockpiles is relevant to evaluating the air pollutants emitted by the stockpiles.  Plaintiff has estimated requiring up to 10-gallon buckets per stockpile to ensure that sufficient material for testing is collected but anticipates fewer buckets will be required.  Before this letter Schnitzer did not raise any concern that this sampling would cause it to lose "valuable in-process materials and finished products."  To address this concern, Plaintiff can agree to return the material to Schnitzer after testing is complete.

Schnitzer's unexplained objection to Plaintiff's methodology as "junk science" is a matter for trial, and does not justify preventing Plaintiff from conducting any sampling at all.  The parties will have the opportunity to depose and, later, cross-examine opposing experts about their methods.  But in the discovery phase, the experts should have the opportunity to access relevant underlying data and form their opinions.  That is why the inspection is critical to Plaintiff's case; whereas Defendant's experts have untrammeled access to Schnitzer's facility, this inspection is Plaintiff's expert's sole opportunity to enter the premises and sample relevant materials.

**Burden.**  Defendant's own case explains that while "the party seeking to compel an inspection under Rule 34 has the initial burden of establishing that its request satisfies the relevance requirements of Rule 26(b)(1)," "following that showing (or if relevance is plain from the face of the request), the party who resists discovery then has the burden to show that discovery should not be allowed, and carries '**the heavy burden of clarifying, explaining, and supporting its**

**objections**'" *Fratus v. Cnty. of Contra Costa*, No. 14-CV-05533-MEJ, 2015 WL 4538076, at *2 (N.D. Cal. July 27, 2015) (emphasis added).[1] Defendant cannot meet its "heavy burden." Allowing Plaintiff to inspect Defendant's facility would not be unduly burdensome or disruptive. That Defendant was seemingly prepared to have the inspection until two days prior to the original date should be dispositive.  Moreover, as Defendant's documents show, the facility is often subject to inspection by regulatory entities.  Plaintiff has also made reasonable efforts to ensure that the inspection would not be unusually disruptive.  This includes, but is not limited to, coordinating with Defendant to find a mutually agreeable date, conducting the inspection during normal business hours, and making reasonable compromises regarding the protocols to be observed on site and the sampling plan.  Finally, Plaintiff's inspection request, including sampling and testing requirements, are in line with those that courts have allowed.  *See, e.g., Ecological Rts. Found. v. Hot Line Constr., Inc.*, No. EDCV201108ABKKX, 2020 WL 7773895, at *1 (C.D. Cal. Dec. 30, 2020) (granting in relevant part plaintiffs request for inspection and sampling); *N.C. Env't Just. Network v. Taylor, No. 4:12-CV-154D*, 2015 WL 1630602, at *4 (E.D.N.C. Jan. 14, 2015) (same).

**Plaintiff's Proposed Compromise.**  Plaintiff asks that the Court compel Defendant to allow Plaintiff to conduct a physical inspection of its facility as soon as reasonably possible, and in no event any later than the close of fact discovery (August 29, 2023).  Plaintiff requests that the physical inspection include access to the Joint Products Plant and stockpile sampling.[2]

**Defendant's Position**

**Introduction; Legal Standard**.  Plaintiff's physical inspection demand under FRCP 34 should be denied because it is not likely to lead to discovery of evidence relevant to Plaintiff's purported air emission claims, it is unnecessary and not proportional to Plaintiff's needs, and it is excessive and unreasonably burdensome, including disruptive of recycling operations.[3] The fact that the parties had identified a tentative date and possible conditions for the inspection is immaterial as two critical conditions remain clearly in dispute—the scope and purpose of Plaintiff's stockpile sampling plan and its request to inspect indoor areas.  Plaintiff was then, and is now, unable to demonstrate how information obtained from these two activities in particular would lead to relevant evidence.  Defendant never agreed to the inspection, and the Parties' stipulation (Dkt.66) reflects the fact there were unresolved issues. Plaintiff's inspection of Defendant's facility violates the basic tenets applicable to Rule 34 inspections of property.

---

[1] Defendant relies on a distinguishable case.  *Keith H. v. Long Beach Unified School Dist.* rejected an "on-site inspection" where "the gravamen of plaintiff's complaint does not address the facility" that plaintiff sought to inspect.  228 F.R.D. 652, 659 (C.D. Cal. 2005).

[2] Subject to the Court's discretion, Plaintiff believes that Defendant's last-minute refusal to allow an inspection and raising of several issues related to the inspection for the very first time in its letter brief is worthy of sanctions.

[3] *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978) (reversing order for Rule 34 inspection, concluding "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection."); *see also Keith H. v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 659 (C.D. Cal. 2005) ("Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted.").

2335207

**Lack of Relevance**.  To prevail, Plaintiff must prove that Defendant was operating in violation of a federally enforceable "emission standard or limitation" at the time the complaint was filed. Plaintiff constantly ignores this critical point.  "Emission standard or limitation" is a defined term under the CAA that refers exclusively to regulations of the Bay Area Air Quality Management District ("BAAQMD") that are applicable to certain categories of air pollutants, and that have been approved by USEPA for inclusion in the State Implementation Plan ("SIP"). Relevance in this case is defined by these precise legal parameters, not by Plaintiff's misinterpretation (or complete disregard) of these rules or by the application of unorthodox scientific methods that purport to quantify emissions.  Contrary to Plaintiff's assertion, Defendant does not contend that the inspection and stockpile sampling are irrelevant "because BAAQMD's regulations govern the facility and private litigants cannot enforce violations of those rules or the CAA." ***Rather, it is because any information that could be gleaned from those activities is not probative of any actionable violation of an emission standard or limitation.***  Plaintiff's suggestion that it must take up the banner of citizen enforcement because BAAQMD "lacks the resources or will" to properly regulate and enforce its rules must be taken with a huge grain of salt, given the extensive administrative record that has been produced and Plaintiff's impending departure for Las Vegas.

Stockpile Sampling Plan.  Air emissions from stockpiles are determined on the basis of emissions testing and the application of emission factors established by air quality agencies, after lengthy analysis and using agreed-upon scientific protocols and data that are gathered according to approved test methods.  ***Plaintiff's sampling plan includes none of these essential attributes***. Instead, under the auspices of Rule 34, Plaintiff seeks to collect and chemically analyze up to ***600 gallons of different stockpiled materials*** in order to "proffer its own conclusions on the types and quantities of pollutants they emit"—in other words, make up its own *ad hoc* "emission factors."  The test methods listed in Plaintiff's sampling plan are not designed to quantify or even reliably estimate emissions to the air and, in any event, Plaintiff's "own conclusions" cannot legally supplant BAAQMD's emission calculations using recognized emission factors. "Emission factors" devised by a private litigant, solely for purposes of litigation and based on tests that are designed for entirely different purposes, are of no relevance.

Defendant made it clear at all times that it needed to review Plaintiff's detailed sampling plan to determine if it was directed to relevant issues ***before*** it would consider agreeing to the inspection. It is not, and Plaintiff's brief provides no meaningful insight into its claim of relevance.  The physical composition of stockpiled materials—especially after they have been manipulated in the myriad ways referenced in Plaintiff's sampling plan—does not allow one to determine what substances are emitted into the air, under what circumstances, or in what quantities. Plaintiff's conclusory and unsubstantiated assertion that its sampling plan is "highly relevant" and "critical" to its claims does not satisfy its burden of proof.  *Fratus v. Cnty. of Contra Costa,* 2015 WL 4538076, at *2 (N.D. Cal. 2015) (party seeking inspection has burden to show relevance).

Inside Inspection. From the outset, Defendant stated that any inspection would be limited to outdoor areas.  The only building at the facility (apart from administrative offices) is the Joint Products Plant ("JPP"), an emission-controlled enclosure which houses highly proprietary metal separation and sorting systems.  The building operates under negative air pressure and has been expressly exempted from permitting or additional controls by BAAQMD.  For months, Plaintiff raised no objection to this condition, but on June 7, suddenly asserted a right to enter the JPP,

4

take pictures and video, and collect samples of materials handled wholly inside the building and not subject to outside air exposure.  Plaintiff has not—and cannot—explain why or how information pertaining to operations or materials inside this highly controlled, exempt building would be probative of an alleged violation of a federally-enforceable emission standard or limitation in the SIP.  Similarly, Plaintiff's claim that it is entitled to inspect the inside of the building to gather evidence of "feasibility" of other enclosures that might be constructed at the facility (raised for the first time in this brief) has no legal relevance in the context of this case. "Feasibility" is a term of art under the CAA that is not equivalent to "physically possible."

**Lack of Necessity; Undue Burden**.  Plaintiff's inspection request came 18 months into the case with the discovery cut-off (then in effect) looming.  By then, Defendant had provided extensive interrogatory answers and produced close to 10,000 documents, including emissions data, source test reports, BAAQMD engineering analyses and other permitting files dating back to 2006, input data for human health risk assessments, proprietary production data, engineering drawings and schematics of operating equipment and emission control systems, facility maps, aerial and ground-level photographs of the facility, and much more.  Not finding any violation it had hoped in this mountain of information, Plaintiff proceeded to make continuing discovery demands in the ensuing months, with over 16,300 documents now having been produced.  Continuing with its scorched earth discovery practices, Plaintiff has noticed seven depositions of Defendant's employees and technical consultants, a 30(b)(6) witness, and government regulatory authorities, all of whom have knowledge of the Oakland facility.  While failing to yield any evidence of Clean Air Act violations, Plaintiff's excessive discovery efforts have provided Plaintiff with unprecedented insight into the facility, including its layout, operations, the number, size and location of stockpiles (which change on a nearly daily basis), equipment, emissions, and emission control technologies. It is flatly untrue that "Defendant has still not provided Plaintiff reliable data, tests, or discovery generally regarding the full extent of emissions from sources at the facility, including the various stockpiles, or controls related to those emissions." A physical inspection of the facility would not reveal any relevant information that cannot be learned from Defendant's discovery responses or from the depositions that are presently noticed.

While, as noted by Plaintiff, Defendant worked to develop conditions to mitigate overburden in the event agreement might be reached, the inspection remains overly burdensome, particularly due to Plaintiff's insistence on carrying out an irrelevant sampling plan and extending its inspection to inside the JPP.  Overburden is due to disruption of normal operations and operating schedules (including shifting night-time operations to the day); increased energy costs; potential loss of production; forfeiture of a large quantity of valuable in-process materials and finished products; reassignment of employees to monitor a large and unwieldy inspection team of nine individuals from Plaintiff; and the newly-sought intrusion into a highly proprietary indoor area.

**Conclusion**.  For the reasons given, Plaintiff's request should be denied.  Inspection of the facility will not lead to discovery of relevant, admissible evidence and is unnecessary and overly burdensome.  To the extent any inspection is permitted, it should at a minimum (i) incorporate all limitations previously accepted by Plaintiff, (ii) be limited to outdoor areas, and (iii) reject Plaintiff's misguided stockpile sampling plan.

Respectfully submitted,

| | |
|---|---|
| */s/ William M. Sloan* <br> William M. Sloan <br> Venable LLP | */s/ Margaret Rosegay* <br> Margaret Rosegay <br> Pillsbury Winthrop Shaw Pittman LLP |
| */s/ R. James Slaughter* <br> R. James Slaughter <br> Keker, Van Nest & Peters LLP | *Attorneys for Defendant Schnitzer Steel Industries, Inc.* |

*Attorneys for Plaintiff Athletics Investment Group*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

   I, R. James Slaughter attest that the concurrence in the filing of this document has been obtained from the other signatories.  Executed on August 2, 2023 in San Francisco, California.

                 _/s/ R. James Slaughter_
                 R. James Slaughter