UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATHLETICS INVESTMENT GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SCHNITZER STEEL INDUSTRIES, INC.,<br><br>Defendant. | Case No. 21-cv-05246-MMC (DMR)<br><br>**ORDER FOLLOWING IN CAMERA REVIEW**<br><br>Re: Dkt. Nos. 103, 142 |

## I.  BACKGROUND

This is an action brought pursuant to the Clean Air Act's ("CAA") citizen suit enforcement provision, 42 U.S.C. § 7604, to challenge Defendant Schnitzer Steel Industries, Inc.'s ("Schnitzer") operations at its metal shredding facility in West Oakland.

Plaintiff Athletics Investment Group, LLC ("AIG") served a subpoena on third-party Bay Area Air Quality Management District ("BAAQMD" or "the District"), a California state agency, for production of 17 categories of documents. [Docket No. 103-1.] BAAQMD produced approximately 5,000 documents in response to the subpoena but withheld nearly 9000 responsive documents. AIG and BAAQMD subsequently filed a joint discovery letter regarding BAAQMD's response. Specifically, AIG challenges the sufficiency of BAAQMD's privilege log; BAAQMD's claim of deliberative process privilege over approximately 9,000 documents; BAAQMD's withholding of "confidential documents shared under [two] interagency agreements"; and BAAQMD's redactions for relevance in 127 responsive documents. [Docket No. 103 (Jt. Letter).] AIG moves for an order compelling BAAQMD to produce the documents that AIG contends were "improperly withheld and redacted." Jt. Letter 1.

Pursuant to the court's instructions, BAAQMD filed its privilege logs for the court's

1  review. [Docket Nos. 104, 105.] The court subsequently ordered AIG to select "20 examples of
2  withheld documents that it contends illustrate BAAQMD's improper assertion of the deliberative
3  process privilege and five examples of documents containing BAAQMD's redactions for
4  relevance," and ordered BAAQMD to lodge the 25 documents for in camera review along with the
5  declaration of BAAQMD official Carol Allen supporting the District's invocation of the
6  deliberative process privilege. [Docket No. 142.] The court noted that after reviewing the
7  exemplar documents it would "make benchmark rulings on the representative samples of
8  documents chosen by AIG and issue additional instructions or order(s) as it deems appropriate."
9  *Id*. The court also ordered BAAQMD to lodge the two interagency agreements under which it
10 withheld "confidential documents." *Id*. BAAQMD timely lodged all exemplar documents and
11 other materials for review. [*See* Docket Nos. 143, 153.]
12 The court reviewed the exemplar documents over which BAAQMD claims deliberative
13 process privilege that were submitted for in camera review along with the accompanying privilege
14 log entries and agency declaration. BAAQMD submitted parent emails and attachments to the
15 exemplars; in total, BAAQMD submitted 48 documents for in camera review. Some but not all of
16 BAAQMD's claims of deliberative process privilege are supported by the record and by the law.
17 To move the parties' dispute toward final resolution, the court sets forth its rulings on the
18 exemplar documents. BAAQMD and AIG shall now apply these benchmark rulings to the
19 remaining disputed documents withheld on the basis of deliberative process privilege as instructed
20 below.
21 The court has also reviewed the five exemplars of redacted documents and the two
22 interagency agreements under which BAAQMD withheld certain documents and now rules on
23 those disputes.

24 **II.    LEGAL STANDARDS**
25 Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. Fed. R.
26 Civ. P. 45. The Advisory Committee Notes to Rule 45 state that "the scope of discovery through a
27 subpoena is the same as that applicable to Rule 34 and the other discovery rules," which in turn is
28 the same as under Rule 26(b). Advisory Committee Notes to 1970 Amendment; Fed. R. Civ. P.

1  34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Federal

2  Rule of Civil Procedure 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006).

Rule 45 provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). "Of course, 'if the sought-after documents are not relevant, nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition undue.'" *Del Campo v. Kennedy*, 236 F.R.D. 454, 458 (N.D. Cal. 2006) (quoting *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995)). "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Gonzales*, 234 F.R.D. at 680.

**III. DISCUSSION OF THE DOCUMENTS SUBMITTED FOR IN CAMERA REVIEW FOR WHICH BAAQMD CLAIMS DELIBERATIVE PROCESS PRIVILEGE**

**A. Deliberative Process Privilege**

The deliberative process privilege protects "the decision making processes of government agencies" in order to "prevent injury to the quality of agency decisions." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975) (quotation marks and citations omitted). "The underlying premise of the privilege is that agency decision-making might be impaired if discussions within the agency were subject to public review, thereby discouraging 'frank

1 discussion of legal or policy matters.'" *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 600 (N.D. Cal. 2009) (quoting *Sears*, 421 U.S. at 150). The deliberative process privilege is not absolute, and even if the privilege applies, "a litigant may obtain discovery of protected material if the need for the documents outweighs the governmental interest in keeping the decision making process confidential." *McKesson*, 264 F.R.D. at 601. The Ninth Circuit has "defined the ambit of the deliberative process privilege . . . narrowly" and the agency bears the burden of showing the privilege applies. *Sierra Club, Inc. v. United States Fish & Wildlife Serv.*, 925 F.3d 1000, 1011 (9th Cir. 2019).

In order for the deliberative process privilege to apply, "a document must be both (1) predecisional or antecedent to the adoption of agency policy and (2) deliberative, meaning it must actually be related to the process by which policies are formulated." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (quotation marks and citation omitted). A document is pre-decisional if it is "prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of State of Cal. V. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (internal citation and quotation marks omitted). A document is deliberative if disclosure of the materials "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id.* at 921. "[A]n agency head does not need to personally review every document in order to invoke the deliberative process privilege" if the agency "provide[s] sufficient detail 'to insure that the privilege remains a narrow privilege which is not indiscriminately invoked.'" *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 611 & n. 4 (N.D. Cal. 2020) (quoting *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998))) (holding that agency head properly invoked the privilege where he reviewed a representative sample of the documents withheld).

For a document to be "deliberative" it should disclose the personal opinions or "mental processes of decision-makers." *California Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 413

(N.D. Cal. 2008). Deliberative documents "reflect[ ] the give-and-take of the consultative process" and include documents that would "inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Examples of deliberative documents include "staff memoranda to senior agency officials with recommendations, legal interpretations and drafts of litigation documents," and "documents [that] reflect an agency's preliminary positions about how to exercise discretion on a policy." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). Such documents may "weigh[ ] the pros and cons of agency adoption of one viewpoint or another." *Coastal States Gas Corp.*, 617 F.2d at 866. They could contain advice, recommendations, or suggestions from an inferior to a superior. *Maricopa II*, 108 F.3d at 1094. However, a final decision-maker need not review every requested document so long as the information is part of the decision-making process "as a whole." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1279 (11th Cir. 2004) (finding that internal memoranda and audit work papers were protected by the deliberative process because they were part of the "entire body of collaborative work" performed by the agency); *see also Sears*, 421 U.S. at 150 (explaining that the privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising *part of a process* by which governmental decisions and policies are formulated" (internal quotation marks and citation omitted)); *Sierra Club*, 925 F.3d at 1016 (documents "reflecting the opinions of individuals or groups of employees rather than the position of an entire agency" are deliberative).

Additionally, while opinions are protected under the deliberative process privilege, "purely factual" material is not. *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) ("*Warner*"). However, factual material can still be protected if "its disclosure would reveal a decision-maker's mental process." *California Native Plant Soc'y*, 251 F.R.D. at 413. "To withhold documents containing factual information under the deliberative process privilege, the declarant must show that the factual information is intertwined with the author's opinions such that the facts and opinions cannot be practically separated." *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-8697 MWF (SSX), 2018 WL 8459926, at *14 (C.D. Cal.

5

Dec. 14, 2018) (citing *Warner*, 742 F.2d at 1161).

**B.   Analysis**

Carol Allen is an Engineering Manager with BAAQMD. She oversees three programs related to BAAQMD's "successful regulation of air quality within the Air District's jurisdiction." Allen Decl. ¶¶ 2, 3. Allen has reviewed and evaluated permit applications from Schnitzer regarding its West Oakland facility (the "Facility") since 2006. These include applications to "increase throughput at the facility, enclose the facility's shredder, enclose the facility's Joint Products Plant, install Regenerative Thermal Oxidizers ('RTOs'), and install an emergency standby diesel-fired engine." *Id*. at ¶ 5. Allen personally reviewed 339 documents, which at the time represented approximately 10% of the total number of documents designated as subject to the deliberative process privilege. She states that the documents she reviewed generally "consisted of draft documents and internal discussions regarding the Air District's regulation of the Facility," including "iterations of draft engineering evaluations, draft emissions calculations, draft permit conditions, draft compliance agreements, draft test methodologies, and related internal strategy discussions." *Id*. at ¶¶ 6-8. For all but six of the documents Allen reviewed, she concludes that the documents "were deliberative and pre-decisional," containing "the mental processes, opinions, recommendations, and/or advice of Air District employees with respect to the Air District's regulatory and enforcement policy towards the Facility." According to Allen, all were "generated prior to the adoption of Air District decisions and/or final policies regarding the Facility." *Id*. at ¶ 11.

**1.   Documents for Which BAAQMD Has Established Privilege**

Considering Allen's declaration, the exemplars, and the corresponding information in BAAQMD's privilege logs, the court concludes that BAAQMD has established that the following exemplars are privileged because they are both pre-decisional and deliberative in that they are part of the process by which the District's decisions and policies were formulated: Exemplars 1, 4a, 7a, 7b, 8a, 8b, 10a, 10b, 10c, 12a, 12*l*, 13, 14, 15, 16, and 17.[1] When examined in context, these

---

[1] Exemplars 9a and 9b are identical to Exemplars 8a and 8b.

1    documents bear the following hallmarks: (1) they are communications between BAAQMD staff or
2    information prepared by BAAQMD staff for internal use; (2) they reflect mental processes,
3    opinions, and deliberations, as well as preliminary studies, analyses, and evaluations related to
4    BAAQMD's regulation of the Facility, including materials related to various permit applications
5    by Schnitzer; and (3) they are all pre-decisional, according to Allen's sworn declaration.

6    Exemplars 18a-18d may be privileged but the District needs to clarify one fact. Exemplar
7    18a is an email in which Carol Allen forwards three attachments without comment to a non-
8    BAAQMD email address that starts with "Carol@..." Exemplars 18b-18d appear to be the three
9    attachments. The privilege log states that these documents reflect decision-making "regarding
10   sources at Schnitzer Steel's Oakland facility." If Allen was forwarding these attachments to
11   herself, the District has established the privilege. However, if Allen was sharing the documents
12   with a different Carol outside BAAQMD, they are not privileged, as discussed below. **By May**
13   **17, 2024**, BAAQMD shall file a supplemental declaration by Allen addressing this factual
14   question.

15   Notwithstanding the court's conclusion that the foregoing documents are protected by the
16   deliberative process privilege, the privilege is not absolute. *Warner*, 742 F.2d at 1161. "A litigant
17   may obtain deliberative materials if his or her need for the materials and the need for accurate fact-
18   finding override the government's interest in non-disclosure." *Id.* It is the requesting party's
19   burden "to show that the privilege should be waived in the instant case." *California Native Plant*
20   *Soc.*, 251 F.R.D. at 415. To determine whether waiver should occur, courts consider "1) the
21   relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the
22   litigation; and 4) the extent to which disclosure would hinder frank and independent discussion
23   regarding contemplated policies and decisions." *Warner*, 742 F.2d at 1161. **By May 20, 2024**,
24   AIG shall file a brief that does not exceed four pages addressing any documents properly withheld
25   by BAAQMD on the basis of the deliberative process privilege for which AIG contends the court
26   should find waiver of the privilege in light of the *Warner* factors. The District may file a four-
27   page response, plus evidentiary support as required, **by May 24, 2024**.
28

### 2. Communications With and Materials from Third Parties

The following exemplars are not privileged. They consist of communications shared between BAAQMD and third parties (for example, Schnitzer, a different state agency, or a non-governmental organization) and/or materials submitted to BAAQMD from third parties: 3, 4b, 4d, 6b, 11a, 11b, 12e, 12g, 12h, 12i, 12j, 12k, and 20. BAAQMD's privilege log entries indicate that these documents were part of the decision-making process with respect to the District's enforcement policy towards the Facility, potential violations at the Facility and the District's resolution thereof, and "sources" at the Facility. However, the privilege log does not identify the authors of the documents as BAAQMD employees and the documents are plainly authored by third parties. There is no indication that they reflect internal advice, recommendations, opinions, or suggestions by BAAQMD employees. Accordingly, the documents do not disclose the personal opinions or "mental processes of decision-makers" and thus are not deliberative. *See California Native Plant Soc'y*, 251 F.R.D. at 413. The fact that documents may have weighed into an agency's decision-making process—i.e., related to the process or considered by the agency during that process—does not mean that they are deliberative, where, as here, they do not reflect the *agency's* views.

Additionally, Exemplar 4c is an undated, unsigned attachment to an email between BAAQMD employees regarding Schnitzer (4a). The privilege log does not identify the author of the document but based on the court's review of Exemplars 4b and 4d, 4c appears to have been authored by a third party, West Oakland Environmental Indicators Project ("WOEIP"), and provided to BAAQMD. Exemplar 4c was not authored by a BAAQMD employee and is therefore not protected by the deliberative process privilege as it does not reflect decision-makers' personal opinions or mental processes.

### 3. Communications Related to Response to Public Records Act Request and Public Relations Decisions

Exemplar 6a is an email from a BAAQMD records custodian to other BAAQMD employees regarding a June 2018 Public Records act request for records related to Schnitzer. Exemplar 6c is a one-page attachment to the email that the records custodian proposed releasing in response to the request. According to BAAQMD's privilege log, these documents are part of

8

1   decision-making "regarding the A's Public Records Act requests related to Schnitzer Steel's
2   Oakland facility."
3         As noted, for the deliberative process privilege to apply, "a document must be both (1)
4   predecisional or antecedent to the adoption of agency policy and (2) deliberative, meaning it must
5   actually be related to the process by which policies are formulated." *Nat'l Wildlife Fed'n*, 861
6   F.2d at 1117 (emphasis added). Exemplars 6a and 6c do not fall within the scope of the
7   deliberative process privilege because they pertain to a Public Records Act request, an issue that
8   does not clearly bear on agency policies or programs. The deliberative process privilege "shields
9   from public disclosure confidential inter-agency memoranda on matters of law or policy," and a
10  document is part of the "'deliberative process' as long as it is 'actually . . . related to the process
11  by which policies are formulated.'" *Id.* at 1116, 1118. The Ninth Circuit has explained that
12  "[g]overnment 'deliberations regarding how best to address public relations matters or possible
13  responses to an inquiry received from an outside entity are not the type of policy decisions the
14  privilege is intended to protect.'" *Transgender L. Ctr. v. Immigr. & Customs Enf't* ("*TLC*"), 33
15  F.4th 1186, 1198 (9th Cir. 2022) (quoting *Al Otro Lado, Inc. v. Wolf*, No. 3:17-cv-2366-BAS-
16  KSC, 2020 WL 6449152, at *4 (S.D. Cal. Nov. 2, 2020) (internal quotation marks and citation
17  omitted)).
18        Similarly, Exemplar 2 is not privileged. It is an email chain regarding a request from a
19  third party (WOEIP) to BAAQMD for its response to an announcement by Schnitzer of a
20  settlement related to LFM (light fibrous material). Part of the chain is an email in which a
21  BAAQMD employee forwarded comments "From Engineering" regarding Schnitzer's
22  announcement. As with Exemplars 6a and 6c, agency "deliberations regarding how best to
23  address public relations matters . . . are not the type of policy decisions the privilege is intended to
24  protect." *TLC*, 33 F.4th at 1198.

        **4.    Communications and Materials for Which BAAQMD Has Not Met Its Burden to Establish Application of the Privilege**

      The remaining exemplars are 5a, 5b, 12b, 12c, 12f, and 19a-19c. As previously noted, the Ninth Circuit has "defined the ambit of the deliberative process privilege . . . narrowly" and the

9

agency bears the burden of showing the privilege applies. *Sierra Club, Inc.*, 925 F.3d at 1011. The District has not met its burden to establish application of the deliberative process privilege on the current record as follows:

- Exemplars 5a and 5b: 5a is a May 2017 email chain between BAAQMD employees regarding the "2015 Toxic Emissions Inventory" and an attachment labeled "2015 Toxic Emissions Inventory." There is a reference in one of the emails that the "2015 Toxic Emissions Inventory . . . is ready to be posted on the web site." The privilege log indicates that these documents are related to "a decision regarding sources at Schnitzer Steel's Oakland facility," but the emails do not clearly bear on such a decision. Rather, they appear to relate to a discussion of posting information on a website, and the attachment appears to be information ready to be posted on a website.

- Exemplars 12b, 12c, and 12f: These documents are attachments to a July 2017 email between BAAQMD employees regarding "files for Schnitzer." The privilege log indicates that these documents are related to "a decision regarding potential violations or violations at Schnitzer Steel's Oakland facility and resolution thereof," but BAAQMD does not explain, and it is not clear, how these three attachments bear on such a decision.

- Exemplars 19a, 19b, and 19c: 19a is an August 2016 email chain between BAAQMD employees regarding "facilities with a projected prioritization score greater than or equal to 100," and 19b and 19c are attachments thereto. The privilege log indicates that these documents are related to "a decision regarding the Air District's enforcement policy towards Schnitzer Steel's Oakland facility," but BAAQMD does not explain, and it is not clear, how the emails and attachments bear on such a decision.

### IV.   BAAQMD'S REDACTIONS TO RESPONSIVE DOCUMENTS

BAAQMD submitted five examples of redacted documents; each contains extensive redactions. According to BAAQMD, these documents contain information about Schnitzer's

facility, in addition to "information about hundreds of facilities subject to its oversight mandate." Jt. Letter 5.  BAAQMD states that it redacted information "based solely on the non-responsive quality of the information contained within those documents, i.e., that the information was about other facilities and not protected by another privilege."  *Id.*[2]  For its part, AIG argues that the redactions are improper and that "how BAAQMD regulates other facilities may be probative of claims in this case."  *Id.* at 3.

As a general matter, it is improper to redact portions of otherwise responsive documents on the grounds that those portions are not relevant or responsive.  *Doe v. Trump*, 329 F.R.D. 262, 275 (W.D. Wash. 2018); *see In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 12230960, at *1 (N.D. Cal. Mar. 15, 2013) ("The Court will not permit Defendants to redact information based on Defendants' unilateral assessment of lack of relevance and/or responsiveness.").  "It is a rare document that contains only relevant information; and irrelevant information within an otherwise relevant document may provide context necessary to understand the relevant information."  *Doe*, 329 F.R.D. at 276.  Redactions are also highly disfavored where, as here, there is a protective order in place.  *See* Jt. Letter 1 (discussing protective order between AIG and BAAQMD); *Magana-Munoz v. W. Coast Berry Farms, LLC*, No. 5:20-CV-02087-EJD, 2022 WL 6584545, at *2 (N.D. Cal. Sept. 29, 2022) (affording only "slight deference" to defendant's concern about disclosure of irrelevant information where there was a protective order in place and disallowing redactions based only on responsiveness and relevancy).

BAAQMD does not explain why the protective order is not sufficient to protect its interests in the redacted material.  Accordingly, as BAAQMD has not shown a legal basis for its redactions, BAAQMD must produce unredacted versions of all non-privileged responsive documents **by May 17, 2024**.

---

[2] Notwithstanding its statement that the redacted information is "not protected" by any privilege, BAAQMD states that "where appropriate, [it agrees] to amend its privilege log to assert the law enforcement investigation privilege."  Jt. Letter 5.  The request is denied in light of BAAQMD's own admission that no privilege protects the redacted information.

11

## V. INTERAGENCY AGREEMENTS UNDER WHICH BAAQMD WITHHELD DOCUMENTS

Finally, BAQMD lodged the two interagency agreements pursuant to which it withheld purportedly confidential documents. The first agreement is an interagency information sharing agreement between the California Air Resources Board and BAAQMD. The second agreement is entitled, "Joint Prosecution Confidentiality Agreement Regarding Investigation of Schnitzer Steel Industries, Inc., in Oakland, California and Related Companies, and Others." The agreements themselves specify the actions any party must take upon receiving a request from a non-party for information covered by the agreements, including notifying other parties of the request and asserting objections to disclosure and all available privileges. According to BAAQMD, documents produced pursuant to the first agreement are protected under the law enforcement investigation privilege and the common interest privilege. Jt. Letter 5. BAAQMD contends that documents shared under the second agreement are protected under the law enforcement and/or the official information privilege. *Id.*[3]

"[T]he federal privilege applicable to the government interest in preserving confidentiality of law enforcement records has various names," including the "official information privilege" and the "law enforcement privilege." *Deocampo v. City of Vallejo*, Civ. No. S-06-1283 WBS GGH, 2007 WL 1589541, at *4 (E.D. Cal. June 1, 2007) (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1991) and *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988)); *see also United States v. McGraw-Hill Cos., Inc.*, No. CV 13-779-DOC (JCGx), 2014 WL 1647385, at *5 n.2 (C.D. Cal. Apr. 15, 2014) (describing different labels applied by courts to the privilege). The purpose of the qualified privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation*, 856 F.2d at

---

[3] The court notes that only one of the deliberative process privilege exemplars submitted for in camera review was also withheld pursuant to one of the interagency agreements at issue, Exemplar 3. As discussed above, Exemplar 3 is not protected by the deliberative process privilege because it was shared with third parties.

1   484.

2   The party asserting the privilege must make a "substantial threshold showing." *Soto v.*

3   *City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (citation omitted).  In order to fulfill this

4   requirement, the party opposing disclosure must submit "at the time it files and serves its response

5   to the discovery request, a declaration or affidavit from a responsible official within the agency

6   who has personal knowledge of the principal matters to be attested to in the affidavit or

7   declaration." *Kelly v. San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987); *Soto*, 162 F.R.D. at 613.

8   The affidavit must include:

> 1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Kelly*, 114 F.R.D. at 670.  If the party asserting the privilege "meets the threshold requirements, the court will order an in camera review of the material and balance each party's interests," *Soto*, 162 F.R.D. at 613 (citations omitted), i.e., whether the government's need for confidentiality outweighs the requesting party's need for the information.

BAAQMD did not submit a declaration in support of its invocation of the law enforcement/official information privilege, and the joint letter contains no reference to any such declaration.  If the District wants to invoke the privilege with respect to certain documents, **by May 20, 2024**, it must file a detailed declaration(s) supporting the privilege for each document in accordance with *Soto* and *Kelly*.  AIG may file a response that does not exceed two pages **by May 24, 2024**.

BAAQMD also raises the "common interest privilege." Jt. Letter 5.  However, the common interest doctrine, also known as the joint defense doctrine or privilege, "is a doctrine that prevents waiver of a pre-existing privilege if the privileged information is shared only with those with a common legal interest." *Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-00939-WHA (JSC),

13

2017 WL 2485382, at *7 (N.D. Cal. June 8, 2017). The common interest doctrine is not an independent privilege; rather, as an "exception[ ] to the rule on waiver . . . it comes into play *only if the communication at issue is privileged in the first instance.*" *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (emphasis added).[4] Therefore, in order to invoke the common interest exception to waiver, BAAQMD must first establish that the withheld documents are protected by the law enforcement/official information privilege, as discussed above.

## VI.   CONCLUSION

In sum, BAAQMD has established that it properly withheld some, but not all, of the exemplars submitted for in camera review pursuant to the deliberative process privilege. Accordingly, AIG's motion to compel and challenge to the sufficiency of BAAQMD's privilege logs is granted in part. **By May 17, 2024**, BAAQMD shall produce to AIG all exemplars that it improperly withheld and unredacted versions of all non-privileged responsive documents. **By May 17, 2024**, BAAQMD shall file a supplemental declaration of Carol Allen addressing Exemplars 18a-18d. **By May 20, 2024**, AIG shall file a brief that does not exceed four pages addressing any documents properly withheld by BAAQMD based on the deliberative process privilege for which AIG contends the court should find waiver of the privilege in light of the *Warner* factors. Any response by BAAQMD is due **by May 24, 2024** and may not exceed four pages, excluding evidentiary support.

With respect to BAAQMD's claim of law enforcement/official information privilege as to documents subject to the interagency agreements, if BAAQMD wants to assert it with respect to specific documents, it shall file a detailed declaration(s) supporting the privilege **by May 20, 2024**. Any response by AIG is due by **May 24, 2024** and may not exceed two pages.

Using the rulings provided in this order and applying them as guidance across the universe

---

[4] The common interest doctrine applies where (1) a communication is made by separate parties in the course of a matter of common legal interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived. *Nidec*, 24 F.R.D. at 578 (citing *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003)). The common interest doctrine is not limited to parties to litigation, but can extend to "interested third parties who have a community of interests with respect to the subject matter of the communications," and "is applicable whenever parties with common interests join[ ] forces for the purpose of obtaining more effective legal assistance." *Id.*

14

of withheld documents, BAAQMD shall re-review each of the documents it is withholding based on the deliberative process privilege and its privilege logs in light of the authority discussed above. **By May 21, 2024**, BAAQMD shall produce to AIG all documents for which it withdraws its deliberative process privilege claims along with updated privilege logs. The parties shall then meet and confer. If disputes remain after meeting and conferring, the parties shall submit a follow-up joint letter **by May 31, 2024** that does not exceed five pages addressing any remaining disputes.

**IT IS SO ORDERED.**

Dated: May 14, 2024



Donna M. Ryu
Chief Magistrate Judge

15