UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATHLETICS INVESTMENT GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SCHNITZER STEEL INDUSTRIES, INC.,<br><br>Defendant. | Case No. 21-cv-05246-MMC (DMR)<br><br>**ORDER ON OUTSTANDING DISCOVERY DISPUTES RE: SUBPOENA TO BAAQMD**<br><br>Re: Dkt. Nos. 166, 169 |

This is an action brought pursuant to the Clean Air Act's ("CAA") citizen suit enforcement provision, 42 U.S.C. § 7604, to challenge Defendant Schnitzer Steel Industries, Inc.'s ("Schnitzer") operations at its metal shredding facility in West Oakland (the "facility"). Plaintiff Athletics Investment Group, LLC ("AIG") served a subpoena for documents on third-party Bay Area Air Quality Management District ("BAAQMD" or "the District"), a California state agency that regulates stationary sources of air pollution in San Francisco Bay Area counties. BAAQMD objected. In relevant part, it withheld approximately 9,000 documents on the basis of the deliberative process privilege. AIG moved to compel. [Docket No. 103 (Jt. Letter).] On May 14, 2024, the court issued an order following in camera review of 48 exemplar documents. In relevant part, the court held that "[s]ome but not all of BAAQMD's claims of deliberative process privilege are supported by the record and by the law," concluding that the District had established the privilege over approximately one-third of the exemplars submitted for review. [Docket No. 157 (May 14, 2024 Order) 2, 6-7.][1]

---

[1] The court ordered BAAQMD to re-review each document withheld based on the deliberative process privilege, "using the rulings provided . . . and applying them as guidance across the universe of withheld documents." The court gave BAAQMD deadlines to produce documents for which it withdraws its deliberative process privilege and to provide updated privilege logs. May

1  The deliberative process privilege may be waived. Accordingly, the court ordered AIG to file a brief by May 20, 2024 "addressing any documents properly withheld by BAAQMD based on the deliberative process privilege for which AIG contends the court should find waiver of the privilege" under governing Ninth Circuit law. *Id*. at 7. It ordered BAAQMD to file any response by May 24, 2024. *Id*. The parties timely filed the requested briefs. [Docket Nos. 166 (Pl.'s Supp. Br.), 169 (BAAQMD's Resp.).]

This order addresses whether BAAQMD's claims of deliberative process privilege should be waived, and rules on AIG's request for an additional deposition. It also addresses BAAQMD's assertion of the law enforcement/official information privilege as to certain documents.

## I. DISCUSSION OF THE DELIBERATIVE PROCESS PRIVILEGE

### A. Legal Standard

The deliberative process privilege protects "the decision making processes of government agencies" in order to "prevent injury to the quality of agency decisions." *N.L.R.B. v. Sears, Roebuck & Co*., 421 U.S. 132, 150-51 (1975) (quotation marks and citations omitted). "The underlying premise of the privilege is that agency decision-making might be impaired if discussions within the agency were subject to public review, thereby discouraging 'frank discussion of legal or policy matters.'" *In re McKesson Governmental Entities Average Wholesale Price Litig*., 264 F.R.D. 595, 600 (N.D. Cal. 2009) (quoting *Sears*, 421 U.S. at 150). The Ninth Circuit has "defined the ambit of the deliberative process privilege . . . narrowly" and the agency bears the burden of showing the privilege applies.

In order for the deliberative process privilege to apply, "a document must be both (1) predecisional or antecedent to the adoption of agency policy and (2) deliberative, meaning it must actually be related to the process by which policies are formulated." *Nat'l Wildlife Fed'n v. U.S. Forest Serv*., 861 F.2d 1114, 1117 (9th Cir. 1988) (quotation marks and citation omitted). As noted, the court previously that BAAQMD had established the privilege over approximately one-third of the documents submitted for review, reasoning that the documents were "both pre-

---

14, 2024 Order 14-15.

2

decisional and deliberative in that they are part of the process by which the District's decisions and policies were formulated." May 14, 2024 Order 6-7.

The deliberative process privilege is not absolute. "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) ("*Warner*"). To determine whether waiver should occur, courts consider "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id*. The requesting party bears the burden "to show that the privilege should be waived in the instant case." *California Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 415 (N.D. Cal. 2008).

**B.  Analysis**

The first *Warner* factor is the relevance of the evidence. AIG offers three bases for relevance of BAAQMD's pre-decisional deliberations. AIG's first claim challenges Schnitzer's failure to obtain a permit to operate its shredder at the facility under Title V of the CAA for two time periods, 2006-09 and 2016-17.[2] One of Schnitzer's defenses is that it is immune from liability for this claim under BAAQMD's "application shield." The application shield protects facilities from "enforcement action[s] for not possessing a major facility review permit" if certain conditions are satisfied, including filing a "complete and timely application" for a permit. *See* BAAQMD Rule 2-6-407.1. An application is timely if submitted "within 12 months after the facility becomes subject to" the Title V thresholds, among other requirements. BAAQMD Rule 2-6-404.1. According to AIG, Schnitzer contends that its October 2018 permit application was

---

[2] The complaint alleges that Schnitzer's facility "receives and stockpiles junked products containing metal, such as vehicles, appliances, construction and demolition materials, and manufacturing waste" which "regularly contain hazardous materials." Compl. ¶ 43. The facility loads these materials into the "mega shredder," which reduces it to small pieces and releases emissions into the air. Magnets then remove ferrous metals from the shredded "feedstock" and the remaining material, called "metal shredder aggregate," is stored "in large, multiple-story high stockpiles outside" which are uncovered. *Id*. at ¶ 44. The facility eventually removes non-ferrous metals from the stockpiled aggregate, and the remaining metal shredder residue is stockpiled, treated, and stockpiled again. *Id*. at ¶ 45. AIG alleges that each step of the shredding process emits air pollutants, including VOCs, particulate matter, and hazardous air pollutants. *Id*. at ¶ 46.

timely under the applicable rule. Pl.'s Supp. Br. 1-2. AIG disputes this; it submits a discovery response in which Schnitzer admits that relevant emissions exceeded the Title V threshold "after May 2017," i.e., potentially more than one year before it filed its application. [Docket No. 166-1 (Silva Decl. May 20, 2024) ¶ 2, Ex. A at 10.] BAAQMD responds that only "matters of public record" regarding Schnitzer's Title V permit application are relevant to determining whether the application shield applies. BAAQMD's Resp. 3. The court disagrees. At the hearing on the parties' cross motions for summary judgment, the Honorable Maxine M. Chesney identified the parties' factual dispute regarding timeliness. [Docket No. 147 (Hr'g Tr., May 3, 2024) 28-29.] BAAQMD's pre-decisional deliberations about Schnitzer's Title V application clearly bear on the timeliness issue.

AIG's second claim alleges that Schnitzer violated BAAQMD regulations regarding the implementation of Best Available Control Technology ("BACT") to control the shredder's emissions. Schnitzer contends that BAAQMD conducted a "BACT determination" that permitted Schnitzer to continue its operations without adopting further emission controls. AIG argues that Schnitzer provided inaccurate information about its emissions to BAAQMD and that BAAQMD relied upon the inaccurate information when making the BACT determination. According to AIG, "but for Schnitzer's representations BAAQMD would have required Schnitzer to implement more stringent controls." Pl.'s Supp. Br. 2. BAAQMD's deliberative materials regarding its BACT determination, including, as recognized by Judge Chesney, the extent to which it relied upon allegedly inaccurate information, are important to Schnitzer's defense to this claim. *See* Hr'g Tr. 39:14-21.

AIG's fourth claim alleges that Schnitzer operated two un-permitted emissions sources at the facility in violation of BAAQMD rules, including the facility's stockpiles of hazardous materials. Schnitzer's defense is that the stockpiles are exempt from permitting. AIG submits an August 2019 email from a BAAQMD engineer to Schnitzer noting that BAAQMD "noticed that stockpiles of metal shredder aggregate [are] not in the source list of the Permit to Operate" and directing Schnitzer to "submit an application for the metal shredder aggregate stockpiles." Silva Decl. ¶ 4, Ex. C (Aug. 13, 2019 email). It contends that the email is evidence that "BAAQMD

4

1  considered requiring Schnitzer to obtain a permit for the stockpiles" and states, "no evidence thus
2  far reflects whether BAAQMD ultimately followed up on the issue." Pl.'s Supp. Br. 3.  At the
3  hearing on the parties' cross motions for summary judgment, Judge Chesney identified issues
4  about BAAQMD's permitting practices that need to be "clear[ed] . . . up."  Hr'g Tr. 93-94.
5  Defense counsel responded that it would call a BAAQMD witness regarding its permitting
6  practices for stockpiles.  *Id.* at 95.  AIG argues that to effectively cross examine the District's
7  witness it is entitled to discovery "into what BAAQMD *actually does* when it comes to
8  permitting" and not be forced to accept "BAAQMD's post hoc rationalizations." Pl.'s Supp. Br. 3
9  (emphasis in original).  In response, BAAQMD asserts that its Rule 30(b)(6) witness, Carol Allen,
10 testified that "the stockpiles were determined to be exempt from permitting requirements."
11 [Docket No. 169-1 (Hogin Decl. May 24, 2024) ¶ 2, Ex. A at 46.]  BAAQMD contends that the
12 parties "can thus present evidence of the determination of exemption." BAAQMD's Resp. 4.
13 However, AIG is entitled to evidence to test the District's testimony on this point, and more
14 specifically, to probe whether BAAQMD followed its usual practice with respect to the facility's
15 stockpiles, particularly where there is evidence that it instructed Schnitzer to submit a permit
16 application for the stockpiles.  In sum, the court concludes that the first *Warner* factor weighs in
17 favor of disclosure.
18    The second *Warner* factor is the availability of comparable evidence from other sources.
19 Here, the District concedes that there is no alternative source of information of BAAQMD's
20 contemporaneous application of its rules to Schnitzer's facility, simply reiterating its arguments on
21 lack of relevance.  *See* BAAQMD's Resp. 4.  This factor weighs heavily in favor of disclosure.
22 *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1124 (N.D. Cal. 2003) (describing
23 "the availability or unavailability of comparable evidence from other sources" as "perhaps the
24 most important factor in determining whether the deliberative process privilege should be
25 overcome").
26    The third *Warner* factor is the agency's role in the litigation.  Courts have found that this
27 factor weighs in favor of the party seeking waiver where the government is a party to the
28 litigation.  *See Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 617 (N.D. Cal.

5

2020). Here, BAAQMD is not a party to the litigation. However, "the privilege was fashioned in cases where the governmental decision-making process is collateral to the plaintiff's suit." *In re Subpoena Duces Tecum Served on Off. Of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998). BAAQMD's decisions are not collateral to the litigation; rather, Schnitzer has undisputedly placed BAAQMD's decision making at the center of this case. *See, e.g., N. Pacifica*, 274 F. Supp. 2d at 1124 ("the decisionmaking process of the City Council is by no means collateral to the litigation; indeed, the decisionmaking process is not swept up into the case, it *is* the case." (cleaned up)). As discussed above, Schnitzer's defenses to claims one, two, and four are intertwined with BAAQMD's decisions regarding permitting, Schnitzer's applications, and the BACT determination. BAAQMD "is not an uninvolved entity that is being asked to disclose a typically confidential document for little reason." *See Llera v. Las Vegas Metro. Police Dep't*, 564 F. Supp. 3d 914, 920 (D. Nev. 2021). This factor weighs in favor of disclosure.

The fourth *Warner* factor requires the court to consider the possibility that disclosure may hinder frank and independent discussion regarding contemplated policies and decisions. Carol Allen, BAAQMD's 30(b)(6) witness, signed a declaration in support of the District's invocation of the deliberative process privilege in which she contends that disclosure of documents containing "the mental processes, opinions, recommendations, and/or advice of Air District employees . . . could undermine the Air District's ability to engage in candid discussions in the future," without elaboration. Allen Decl. ¶ 11. This statement is too vague and generalized to defeat a finding that the privilege should be waived in this case, especially in light of the specific relevance of the documents as detailed by AIG. Moreover, "if because of this case, members of government agencies acting on behalf of the public at large are reminded that they are subject to scrutiny, a useful purpose will have been served." *Newport Pac. Inc. v. Cnty. Of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001). Importantly, a protective order is already in place and will mitigate the District's concerns by controlling the breadth of disclosure.

Having considered the *Warner* factors, the court concludes that AIG's need for disclosure of the documents withheld based on the deliberative process privilege overrides BAAQMD's interest in confidentiality. AIG has identified pre-2020 BAAQMD documents as those most

1    critical to the claims and defenses in this case, and the court previously ordered BAAQMD to

2    focus its re-review and production of documents and an updated privilege log on that time period.

3    [Docket No. 168 (Minute Order).] It also ordered the parties to meet and confer to refine the

4    District's re-review of documents from 2020 on, including the use of targeted search terms to

5    focus on the key documents. *Id*. The parties filed a joint letter on May 24, 2024 setting forth an

6    agreed-upon schedule for the review and production of documents, including prioritizing pre-2020

7    documents. [Docket No. 170.]

8          The court's ruling on waiver applies to all of the pre-2020 documents withheld by

9    BAAQMD based on the deliberative process privilege, as well as withheld documents from 2020

10   and later that have been or will be identified by the parties via targeted search terms. The court

11   finds that defining the scope of the waiver to cover these two groups of documents appropriately

12   balances the parties' interests, as well as the proportionality factors listed in Rule 26(b)(1).

13   BAAQMD's concerns about maintaining the confidentiality of the withheld documents will be

14   mitigated by producing them pursuant to the existing protective order. This will control their

15   disclosure, with only the most critical documents likely to become public as trial exhibits.

16   BAAQMD shall complete its production of the documents for which the court has found waiver

17   by June 3, 2024.

18         Additionally, considering the importance of the withheld documents to the claims and

19   defenses at issue, the court concludes that any prejudice caused by the delayed production of

20   withheld documents may be remedied by granting in part AIG's request for an additional

21   deposition of Allen. [*See* Docket No. 167.] AIG may depose Allen for up to four additional

22   hours. AIG may not ask questions that it already asked at Allen's previous deposition unless the

23   questions relate to newly produced documents.

24   **II.   OFFICIAL INFORMATION PRIVILEGE**

25         In the May 14, 2024 Order, the court examined BAAQMD's assertion of the law

26   enforcement/official information privilege over certain documents that it withheld pursuant to two

27   interagency information sharing agreements. May 14, 2024 Order 12-13. The District did not

28   submit a declaration supporting the privilege in accordance with *Soto v. City of Concord*, 162

F.R.D. 603, 613 (N.D. Cal. 1995), and *Kelly v. San Jose*, 114 F.R.D. 653, 670 (N. D. Cal. 1987). The court ordered the following, "[i]f the District wants to invoke the privilege with respect to certain documents, by May 20, 2024, it must file a detailed declaration(s) supporting the privilege for each document in accordance with *Soto* and *Kelly*." May 14, 2024 Order 13 (emphasis removed). The court later extended this deadline to May 23, 2024. [Docket No. 165.] BAAQMD failed to file a declaration in support of its invocation of the law enforcement/official information privilege. Accordingly, the court concludes that the District has withdrawn any claim of privilege over documents withheld pursuant to the interagency agreements. By June 3, 2024, BAAQMD shall produce all documents withheld solely on the basis of the law enforcement/official information privilege, as well as all documents withheld on that basis plus the deliberative process privilege where the court has found waiver of that privilege through this order.

Finally, given the rulings in this order, it is unclear whether revised privilege logs are necessary. Accordingly, the parties shall meet and confer on this issue. Any revised privilege logs shall be produced by June 7, 2024, in accordance with the parties' previous agreement. [*See* Docket No. 170.]

### III.   CONCLUSION

For the foregoing reasons, AIG's motion to compel documents withheld by BAAQMD based on the deliberative process privilege is granted. BAAQMD shall produce the withheld documents described above by no later than June 3, 2024, in accordance with the parties' agreement as memorialized in their May 24, 2024 joint discovery letter. [*See* Docket No. 170.] By the same date, it shall also produce all documents described above that were withheld pursuant to the interagency agreements. AIG may depose Carol Allen for an additional four hours, subject to the limits set forth in this order.

**IT IS SO ORDERED.**

Dated: May 28, 2024



Donna M. Ryu
Chief Magistrate Judge

8